IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORINDA REICHERT, | No. C 11-03592 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND VACATING HEARING** |
| TIME INC., ADMINISTRATIVE COMMITTEE OF THE TIME WARNER PENSION PLAN, and FMR LLC, | |
| Defendants. | |

## INTRODUCTION

In this breach-of-contract action, all defendants move to dismiss the complaint for failure to state a claim. For the following reasons, defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff Lorinda Reichert was an employee of Sunset Publishing Corporation — a subsidiary of defendant Time Inc. — for over forty years. From 2000 to 2009, plaintiff's position was Vice President of Administration and Manufacturing. In December 2008, plaintiff learned that her position would soon be eliminated. Concerned about the financial implications of retiring earlier than expected, plaintiff began closely examining her finances. Plaintiff had been participating in the Time Warner Pension Plan since 1999. In June 2008, defendant Fidelity Investments — a fiduciary of the Plan — began offering an online pension calculator. Through

1  this calculator a participant of the Plan could view a summary of pension benefits based on a
2  projected date of retirement (Compl. ¶¶ 4, 7, 10–11, 13, 15).

3  Between June and December 2008, plaintiff used the online pension calculator "on at least
4  six occasions." Each time, the projected pension benefits were approximately $1.7 million if
5  taken as a lump sum. In September 2008, plaintiff contacted Fidelity to discuss her retirement
6  strategy, and Fidelity sent a summary including pension projections consistent with the online
7  projections. In December 2008, plaintiff received a pension statement from the Time benefits
8  department. The statement was also consistent with the $1.7 million lump sum valuation
9  (*id.* at ¶¶ 16, 17, 20).

10  In February 2009, plaintiff negotiated her severance agreement with Time. During the
11  negotiations, she asked for a guarantee that her actual pension benefits would not be "materially
12  different" from the pension statement provided by the Time benefits department in
13  December 2008. A "good faith estimate" of the pension payout was appended to the agreement.
14  This appended estimate — like the previous estimates — stated that plaintiff's payout would
15  be $1.7 million if taken as a lump sum (*id.* at ¶¶ 23–24).

16  Plaintiff's termination date was March 15, 2009. In July 2009, she received a letter from
17  Fidelity stating that her projected pension benefits under the Plan would be
18  approximately $725,000. Alarmed by the discrepancy between this figure and previous
19  projections, plaintiff contacted the Time benefits department. She learned that the previous
20  estimates were erroneous because plaintiff's years of service had been incorrectly calculated
21  (*id.* at ¶¶ 20, 26–27).

22  Plaintiff commenced the present action in July 2011, naming Time, the Administrative
23  Committee of the Time Warner Pension Plan, and Fidelity as defendants. Plaintiff alleges five
24  claims for relief: (1) breach of contract against Time; (2) breach of the covenant of good faith
25  and fair dealing against Time; (3) breach of fiduciary duty against Fidelity; (4) breach of fiduciary
26  duty against the Committee; and (5) professional negligence against Fidelity in the alternative to
27  the third claim for breach of fiduciary duty against Fidelity. All three defendants now move to
28  dismiss all claims for failure to state a claim. This order follows full briefing.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

### 1. CONTRACTUAL CLAIMS AGAINST TIME.

Plaintiff's complaint alleges two claims against Time — breach of contract and breach of the duty of good faith and fair dealing. Defendants argue that plaintiff waived the right to bring these claims when she signed a release at the same time that she signed her severance agreement. In the release, plaintiff agreed to "release and forever discharge the Company and Time Warner" and their "agents [and] employees" from "any and all actions, causes of action, [and] claims" (Parker Exh. E at 5).

#### A. Breach of Contract.

Plaintiff argues that the release does not defeat her claim for breach of contract because she is seeking enforcement of the severance agreement *itself* (Opp. 10). Plaintiff argues that the severance agreement was not properly performed because she is no longer eligible to receive the amount of pension listed in the appended estimate.

The only language pertaining to the Plan in the severance agreement stated that on March 1, 2009, plaintiff became "eligible to retire pursuant to the terms of the Time Warner Pension Plan in effect at that time. A good faith estimate of [plaintiff's] pension payout is attached to this agreement" (Parker Exh. E at 2). The agreement contained no language guaranteeing a *specific* amount of payout. Notably, during her severance negotiations, plaintiff

3

1 attempted to insert a clause promising that her actual payout would not be "materially different"
2 from the estimate, but Time refused.  While the appended estimate was inaccurate, plaintiff does
3 not allege that the estimate was intentionally misleading or prepared in bad faith.  Plaintiff admits
4 that Time did not discover the discrepancy until *after* the severance agreement had been signed
5 (Compl. ¶ 27).

6      Plaintiff does not dispute that every other element of the severance agreement has been
7 performed.  The agreement, among other things, guaranteed her 104 weeks of severance pay
8 totaling $412,000 and payment for unused vacation days.  Plaintiff has received the benefit of the
9 entire severance pay, and has become eligible to collect a pension according to the Plan.  Plaintiff
10 has failed to identify any term of the severance agreement that has been breached.  Plaintiff
11 asserts insufficient facts to state a claim for breach of contract.  Accordingly, defendants' motion
12 to dismiss this claim is **GRANTED**.

### B.     Breach of the Duty of Good Faith and Fair Dealing.

14      Plaintiff claims that Time breached its duty of good faith and fair dealing "by failing to
15 provide a reasonable and accurate pension estimate," and by now representing that the actual
16 amount of the pension is significantly less than the original estimate (Compl. ¶ 39).  Under
17 California law, every contract contains an implied covenant of good faith and fair dealing that
18 "neither party will do anything which will injure the right of the other to receive the benefits of
19 the agreement." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120
20 (2008).

21      Plaintiff fails to specify how Time supposedly prevented her from receiving the benefits of
22 the agreement.  The severance agreement did *not* guarantee her $1.7 million in pension benefits.
23 The pension estimate appended to the agreement was not accurate.  The estimate, however, was
24 prepared by Fidelity — *not* Time.

25      Furthermore, the release that plaintiff signed contained the following language
26 (Parker Exh. E at 5):

4

> I understand and agree that I may later discover claims or facts in addition to or different from those which I now know or believe to be true with respect to the subject matters of this Agreement, but that it is nevertheless my intention by signing this Agreement to fully, finally and forever release any and all claims whether now know or unknown, suspect or unsuspected, which now exist, may exist, or previously have existed as set forth herein.

Plaintiff is attempting to use new information as a basis for a claim against Time. This is expressly forbidden by the release she signed.

Plaintiff has failed to state a claim against Time for breach of the duty of good faith and fair dealing. Accordingly, defendants' motion to dismiss this claim is **GRANTED**.

### 2. ERISA BREACH-OF-FIDUCIARY-DUTY CLAIMS.

Plaintiff alleges that Fidelity and the Committee breached fiduciary duties owed under ERISA. A fiduciary under ERISA has a duty to discharge its duties with respect to the Plan "solely in the interest of the participants and beneficiaries," and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. 1104(a)(1)(B). Defendants offer several reasons why plaintiff's ERISA claims must fail. None is persuasive. Each is addressed in turn.

#### A. Fidelity and the Committee Were Not Included in the Release.

Defendants argue that plaintiff waived her right to bring claims against Fidelity and the Committee by signing the release of claims. Defendants argue that Fidelity and the Committee were covered by the release because they acted as "agents" or "administrators" of Time.

An individual is a fiduciary under ERISA if "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets." 29 U.S.C. 1002(21). Defendants do not dispute that Fidelity was a fiduciary of the Plan. The Committee was expressly named as a fiduciary in the Plan (Parker Exh. B at 60).

The Plan also stated that all fiduciaries must discharge their duties "*solely* in the interest of the Participants and their Beneficiaries, for the *exclusive* purpose of providing benefits to such persons" (*ibid.*) (emphasis added). It is clear from the language of the Plan that Fidelity and the

5

Committee owed a duty of loyalty to the participants in the Plan, *not* to Time. In their functions, they were required to act as administrators of the Plan, and agents to the participants. As such, they could *not* have been agents or administrators of Time. Accordingly, Fidelity and the Committee were not covered by the release plaintiff signed.

### B. The Functions of Fidelity and the Committee Were Not Purely Ministerial.

Defendants argue that the conduct plaintiff complained of involved a purely ministerial (rather than fiduciary) function, and thus plaintiff's breach of fiduciary duty claims must fail. Defendants misleadingly imply that a fiduciary ceases owing a fiduciary duty when performing tasks such as preparing a pension plan estimate. Not so. A person who has the power *only* to perform ministerial work and has *no* discretionary authority or control is not a fiduciary to begin with. 29 C.F.R. 2509.75-8. While part of the responsibilities of Fidelity and the Committee involved ministerial duties, their duties also included discretionary authority over the Plan. Thus, they owed a fiduciary duty to the participants.

### C. Plaintiff Does Not Need to Allege an Intentional Misrepresentation.

Defendants next argue that plaintiff's breach-of-fiduciary-duty claims must fail because she failed to allege that Fidelity or the Committee made an intentional misrepresentation. To support their argument that an intentional misrepresentation is necessary, defendants cite to several decisions from other circuits. In the Ninth Circuit, however, "[a] person actively misinforms by saying that something is true when it is not true. But the person also misinforms by saying that something is true when the person does not know whether it is true or not." Making such affirmative misrepresentations violates the "core obligation of the ERISA fiduciary." *Wayne v. Pacific Bell*, 238 F.3d 1048, 1055 (9th Cir. 2001). It is therefore not necessary for plaintiff to allege an *intentional* misrepresentation in order to state a claim for breach of fiduciary duty. Plaintiff has stated sufficient facts to give rise to the inference that Fidelity and the Committee made statements when they did not know if they were true or not. These allegations state a claim for breach of fiduciary duty.

6

#### D. **Plaintiff States a Claim for Detrimental Reliance.**

Defendants argue that the claims for breach of fiduciary duty should be dismissed because plaintiff pled facts insufficient to establish that she detrimentally relied on the erroneous statements. Defendants argue that plaintiff is in the same position now as if she had never obtained an incorrect pension estimate. Plaintiff alleges in her complaint, however, that she became concerned about her financial situation after learning she would have to retire several years earlier than she had planned and began seeking clarification of her finances. Plaintiff alleges that she declined to negotiate her severance package with Time until she received confirmation of her pension payout. Plaintiff relied on her pension estimates while negotiating her severance package, which is evidenced by the fact that she attempted to include language in the agreement that the payout would not be "materially different" from the estimates (Compl. ¶¶ 14, 18, 24). Plaintiff has pled facts sufficient to support an inference that she relied on the erroneous estimate and that she suffered a detriment by receiving less than half of the payout she expected.

\* \* \*

All of defendants' arguments for dismissing the claims for breach of fiduciary duty fail. Accordingly, defendants' motion to dismiss the breach-of-fiduciary-duty claims against Fidelity and the Committee is **DENIED**.

### 3. PROFESSIONAL NEGLIGENCE CLAIM AGAINST FIDELITY.

As an alternative to the breach-of-fiduciary-duty claim against Fidelity, plaintiff alleges professional negligence. Defendants argue that this claim based in California law is preempted by ERISA. The preemption provision in ERISA provides that ERISA "shall supercede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. 1144(a) (emphasis added). A state law may "relate to" a benefit plan — and therefore be preempted — even if the law was not specifically designed to effect such plans, or the effect is only indirect. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).

Plaintiff alleges that Fidelity "breached its professional duties by providing grossly inaccurate information to [plaintiff] regarding her pension benefits under the Pension Plan on at

7

least ten occasions" (Compl. ¶ 65). At the root of this claim is the allegation that Fidelity's inaccurate estimates *related to* the Plan, and for this reason plaintiff's claim for professional negligence is preempted by ERISA. Accordingly, defendants' motion to dismiss this claim is **GRANTED**.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. More specifically, defendants' motion to dismiss plaintiff's first, second, and fifth claims is **GRANTED**. Defendants' motion to dismiss plaintiff's second and third claims is **DENIED**. This is a troubling case if the allegations are sound, and the Court will allow full discovery against Time and all others involved to get to the bottom of how and why a large error like this could have been made. Discovery may show that Time acted in good faith, but perhaps it will show that Time suspected that an error may have been made and let it go unexamined. This order will allow plaintiff leave to seek an amendment and will allow plaintiff to conduct some discovery before having to re-plead.

Even if Time were totally dismissed from the action, third-party discovery would be permitted against Time, including document and deposition discovery, to find out how the error occurred, given that at all events the action would go forward as to other defendants. So, pending a motion for leave to amend, Time will remain as a party and be subject to the party discovery rules. Plaintiff must file a motion for leave to amend by **MARCH 8, 2012**, to be heard on the normal 35-day track. Meanwhile, all parties must cooperate in reasonable discovery. The hearing scheduled for November 17 is **VACATED**.

**IT IS SO ORDERED.**

Dated: November 3, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE